**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (#270796)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Plaintiff Jian Zhou*

[Additional Counsel On Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAN ZHOU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., CARSTEN BREITFELD, ZVI GLASMAN, WALTER J. MCBRIDE, JORDAN VOGEL, AARON FELDMAN, and YUETING JIA,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Jian Zhou ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Faraday Future Intelligent Electric Inc. ("Faraday Future," "FF," or the "Company") f/k/a Property Solutions Acquisition Corp. ("PSAC") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Faraday Future; and (c) review of other publicly available information concerning Faraday Future.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Faraday Future securities between January 28, 2021 and November 15, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Faraday Future claims it designs and engineers next-generation smart electric connected vehicles.

3.     PSAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

4.     On January 28, 2021, PSAC and FF Intelligent Mobility Global Holdings Ltd. ("Legacy FF") announced that PSAC and Legacy FF entered into a definitive agreement for a business combination, and that the combined company would be renamed Faraday Future (the "Business Combination").

5.     On July 21, 2021, Faraday Future announced that it had completed the Business Combination and that its common stock and warrants would commence

trading on the NASDAQ on July 22, 2021 under the ticker symbols "FFIE" and "FFIEW", respectively.

6.     On October 7, 2021, J Capital Research published a report alleging, among other things, that Faraday Future was unlikely to ever sell a car, noting that after eight years in business, the Company has "failed to deliver a car," "has reneged on promises to build factories in five localities in the U.S. and China," "is being sued by dozens of unpaid suppliers," and "has failed to disclose that assets in China have been frozen by courts." Moreover, the report alleged that Faraday Future's claimed 14,000 deposits are fabricated because 78% of these reservations were made by a single undisclosed company that is likely an affiliate. The report further alleges that contrary to representations of progress toward manufacturing made by Faraday Future in September 2021, former engineering executives did not believe that the car was ready for production.

7.     On this news, the Company's share price fell $0.35 per share, or more than 4%, to close at $8.05 per share on October 8, 2021.

8.     On November 15, 2021, Faraday Future announced that it would be unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 on time. Faraday Future further announced that its board of directors "formed a special committee of independent directors to review allegations of inaccurate disclosures," including the claims in the J Capital report.

9.     On this news, the Company's share price fell $0.28 per share, or approximately 3%, to close at $8.83 per share on November 16, 2021.

10.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had assets in China frozen by courts, (2) that a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) that the Company's cars were not as close to

production as the Company claimed; (4) that, as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

15.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

16.     Plaintiff Jian Zhou, as set forth in the accompanying certification, incorporated by reference herein, purchased Faraday Future securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Faraday Future is incorporated in Delaware with its principal executive offices located at 18455 S. Figueroa Street, Gardena, California 90248. Faraday Future's Class A common stock trades on the NASDAQ under the symbol "FFIE" and its Redeemable warrants, exercisable for shares of Class A common stock at an exercise price of $11.50 per share, trade under the symbol "FFIEW." Prior to the Business Combination, PSAC's common stock traded on the NASDAQ exchange under the symbol "PSAC," and its redeemable warrants, exercisable for shares of common stock at an exercise price of $11.50 per share, traded under the symbol "PSACW."

18.     Defendant Carsten Breitfeld ("Breitfeld") was the Chief Executive Officer ("CEO") of Legacy FF prior to the Business Combination, and the CEO of Faraday Future after the Business Combination.

19.     Defendant Zvi Glasman ("Glasman") was the Chief Financial Officer ("CFO") of Legacy FF prior to the Business Combination, and the CFO of Faraday Future after the Business Combination until October 27, 2021.

20.     Defendant Walter J. McBride ("McBride") was the CFO of Faraday Future from November 1, 2021 through the end of the Class Period.

21.     Defendant Jordan Vogel ("Vogel") was the Co-CEO of PSAC from its inception until the Business Combination.

22.     Defendant Aaron Feldman ("Feldman") was the Co-CEO and Treasurer of PSAC from its inception until the Business Combination.

23.     Defendant Yueting Jia ("Jia") is the Founder of Legacy FF. He served as Chief Product and User Ecosystem Officer of Legacy FF and retained the position after the closing of the Business Combination.

24.     Defendants Breitfeld, Glasman, McBride, Vogel, Feldman, and Jia (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Faraday Future claims it designs and engineers next-generation smart electric connected vehicles.

26.     PSAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

**Materially False and Misleading**
**Statements Issued During the Class Period**

27.     The Class Period begins on January 28, 2021. On that day, PSAC and Legacy FF issued a press release titled "Faraday Future to List on NASDAQ Through Merger With Property Solutions Acquisition Corp. With Estimated $1 Billion in Proceeds." Therein, they announced that PSAC and Legacy FF entered into a definitive agreement for a business combination, and that following the closing, the combined company will be listed on the NASDAQ. In greater part, they stated:[1]

> This transaction validates FF's vision to create a mobility ecosystem built upon innovations in technology and products. FF's flagship product offering will be the FF 91, featuring industry leading 1,050 HP, 0-60 mph in less than 2.4 seconds, zero gravity seats with the largest 60-degree reclining angles and a revolutionary user experience designed to create a mobile, connected, and luxurious third Internet living space. FF 91 is targeted to launch within twelve months after closing of the merger.

> Commenting on today's significant milestones, Faraday Future's Global Chief Executive Officer, Dr. Carsten Breitfeld said, "We are excited to enter into this partnership with PSAC. This is an important milestone in our company's transformation, one that we achieved with strong commitment from our employees, suppliers, and partners in the U.S. and China, as well as the city of Hanford, California. I am excited that this business combination will allow us to launch the class defining FF 91, building upon the founder's original vision to help our users and shareholders take part in shaping the future of mobility."

> "Faraday Future is a unique and differentiated electric vehicle company with significant growth prospects for the future," said Property Solutions Co-CEO and Chairman Jordan Vogel. "We believe the excellent management team, led by Dr. Breitfeld, and industry-leading technology will allow Faraday Future to reach its true growth potential."

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

FF has invested over $2 billion dollars since its inception. In addition to the development of its first model FF 91, the product definition of the second model FF 81 has been completed, and the R&D work is progressing.

\*     \*     \*

*FF's B2C passenger vehicle launch pipeline over the next five years includes FF 91 series, FF 81 series, and FF 71 series. FF 91 will define the FF brand DNA. This DNA will carry over to subsequent premium mass market vehicles in the portfolio – the FF 81, and FF 71. With such brand DNA, FF products are expected to be ahead of the competition in their respective segments in terms of their design, driving experience, interior comfort, connectivity, and user experience. FF 81 is expected to launch in 2023, and FF 71 in 2024. In addition to passenger vehicles, FF plans to launch a Smart Last Mile Delivery ("SLMD") vehicle in 2023 leveraging its proprietary VPA.* To implement a capital light business model, FF has adopted a global hybrid manufacturing strategy consisting of its refurbished manufacturing facility in Hanford, California and collaboration with a leading contract manufacturing partner in South Korea. The company is exploring the possibility of additional manufacturing capacity in China through a joint venture.

As the world's only tech-luxury intelligent Internet electric vehicle brand, FF expects to sell more than 400,000 units cumulatively over the next five years, and *its first flagship model, the FF 91, has received over 14,000 reservations*.

28.     On March 19, 2021, the Company published the text of a Q&A session with IPO Edge. Therein, the Company, in relevant part, stated:

FF has the most exciting growth opportunity ahead in the EV market. *The transaction is expected to fully fund the production of our flagship halo vehicle, the luxury electric FF 91, within 12 months of close*. The FF 91 is scheduled to launch in 2022, making our market disrupting product a relatively near-term reality. Our technology has been tested by the world's leading experts, who believe we have an edge that can transform the market with unparalleled performance. FF is led by a world-class management team with deep automotive, software, and internet experience.

***We have existing demand for the FF 91 by way of more than 14,000 reservations, and a strong strategy to scale in the US and China***. The strong signal we are seeing from China significantly expands the opportunity ahead for FF, evidenced by the fact that we have a Tier 1 city and a top three Chinese OEM participating in the PIPE financing. These strategic partners will help establish FF's presence in the Chinese market, further solidifying FF's unique US-China dual home market strategy.

29.    On April 5, 2021, PSAC filed its Registration Statement on Form S-4 in connection with the merger. In the Registration Statement, the Company stated:

FF intends to commercially launch FF 91 series within twelve months after closing of the Business Combination. Toward that goal, FF has completed most of the vehicle development milestones, including 29 prototype and 13 pre-production assets. FF 91 series is designed to compete with Maybach, Bentley Bentayga, Lamborghini Urus, Ferrari Purosangue, Mercedes S-Class, Porsche Taycan, BMW 7-Series etc.

\*        \*        \*

FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination. FF has completed 29 prototypes and 13 pre-production assets and has completed most of the vehicle development hurdles including feasibility, concept and development phases. As of the date hereof, 94% of the key components for FF 91 have been sourced, 91% production tooling is complete and 75% of production equipment is complete.

30.    On June 24, 2021, PSAC filed its Prospectus on From 424(b)(3), soliciting stockholder approval of the merger with Legacy FF. Therein, the Company, in relevant part, stated:

FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, ***FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination***.

31.   On July 21, 2021, Faraday Future announced the closing of the Business Combination.

32.   On September 19, 2021, Faraday Future published a "Futurist Day Presentation" titled "Faraday Future Hosts 919 Futurist Day Co-Creation Celebration and Announces New Business Initiatives as well as Positive Progress on FF 91 Production and Vehicle Delivery." Therein, the Company, in relevant part, stated that "[t]he transaction is expected to fully fund the production of class-defining performance luxury electric FF 91 within 12 months of transaction close" and that "Faraday Future's advanced manufacturing and factory operations teams have made significant progress with the support of our equipment suppliers in preparing the Hanford factory for the launch of the FF91."

33.   The above statements identified in ¶¶ 27-32 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company had assets in China frozen by courts, (2) that a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) that the Company's cars were not as close to production as the Company claimed; (4) that, as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

34.   The truth began to emerge on October 7, 2021 when J Capital Research published a report titled "Move Over Lordstown: There's a New EV Scam in Town." Therein, J Capital Research alleged, among other things, that Faraday Future was unlikely to ever sell a car, noting that after eight years in business, the Company has "failed to deliver a car," "has reneged on promises to build factories in five localities in the U.S. and China," "is being sued by dozens of unpaid

suppliers," and "has failed to disclose that assets in China have been frozen by courts." Moreover, the report alleged that Faraday Future's claimed 14,000 deposits are fabricated because 78% of these reservations were made by a single undisclosed company that is likely an affiliate. The report further alleges that contrary to representations of progress toward manufacturing made by Faraday Future in September 2021, former engineering executives did not believe that the car was ready for production. J Capital Research summarized its findings:

> We don't think Faraday Future (FFIE), an EV SPAC, will ever sell a car. So far, it's nothing but a bucket to collect money from U.S. investors and pour it into the black hole of debt created by its founder, China's best-known securities fraudster, Jia Yueting.

> ***After eight years in business, FFIE has failed to deliver a car and is yet again saying "next year." The company has reneged on promises to build factories in five localities in the U.S. and China and repeatedly delayed the sixth. FFIE is being sued by dozens of unpaid suppliers and has failed to disclose that assets in China have been frozen by courts. And Jia appears to be running the company behind the scenes.***

> Given the current bubble environment, FFIE nevertheless managed to raise about $1 bln from U.S. investors via PIPEs and SPAC merger in July. Now it promises to restart its abandoned factory in Hanford, California and mass-produce cars in just seven months. We doubt that timeline will hold: three recent visits to the factory showed little activity, and company formers told us there are still engineering problems to work out.

> FFIE is the malformed lovechild of the imperiled Chinese real estate developer Evergrande (3333 HK) and Jia, China's fugitive default king. We expect Evergrande, which owns 20.5% of this company and stands to gain more equity, to sell off its shares as soon as the lockup period ends, in January 2022 if not, quietly, before that.

> ***In January 2021, the company claimed it had 14,000 reservations for the car—until one week after Hindenburg published its findings that Lordstown's orders were faked. Without explanation, after March 19, FFIE no longer made reference to the number of reservations. In***

*fact, these reservations--78% of which were from a single company—had been converted in 2020 to a note payable earning 8% interest*. The company strongly implies that the mystery booker, who was apparently ready to spend well over $1 bln on FFIE cars, may be an "affiliate." They fail to say who it was. In H1 2021, despite the upcoming SPAC merger, FFIE took in just $144,000 in new customer deposits.

\*      \*      \*

On September 20, 2021, the company issued a new presentation claiming progress toward manufacturing. *But former engineering executives we interviewed did not believe that the car was ready for production.* FFIE's contention that it needed just $90 mln to start mass production in seven months is "not even in the ballpark of true," said one formerly highly placed executive. Another former executive said, "The story with the SPAC is that they just needed money to manufacture, but I think there are still some critical engineering issues."

Chinese government reports show that in 2016, FFIE's subsidiary LeSee put $154 mln into the company's largest planned manufacturing site, in China's Zhejiang Province, but we visited the location and found nothing but an overgrown field. The area is so deserted that even the police station in what was intended to be the Faraday factory park has closed.

Jia Yueting, FFIE founder, has been banned for life from being associated with publicly listed companies in China. FFIE admits in its "risks" section that he has "illegally" provided funding and guarantees to affiliated companies, improperly diverted proceeds from the public offering of a company he controlled, and lied to Chinese regulators and investors. In Hong Kong, where he was chairman of the long-halted Coolpad Group Limited (2369 HK), he failed to disclose key transactions. Holding the title "Partner, Chief Product & User Ecosystem Officer," Jia still controls key spending decisions at FFIE through the FF Global Executive Committee. Because of him, FFIE's USD accounts in China have been frozen by regulators. In a lawsuit against FFIE, the company's former General Counsel Hong Liu claimed that a Jia "clique" controlled the company regardless of legal commitments.

Embarrassed by Jia, FFIE hired a "professional" CEO in September 2019, but his track record in Chinese EVs is not much better. Carsten Breitfeld was co-founder of Nanjing-based Byton, which owed suppliers and employees millions of dollars when it stopped operating in 2020. He conveniently omits from his bio in the prospectus his ill-fated tenure as CEO of another Chinese EV hopeful called Iconiq, which raised over ¥1.2 bln before going silent. He gets tepid reviews from formers.

In the current overheated EV environment, the company appears to be having difficulty finding talent In September, FFIE announced new executives: one from Lordstown—the company an FFIE former said "is setting new standards for fraud"--and two from Karma, a moribund company that the auto news site Jalopnik claims may have faked prototypes. One of the Karma graduates is an ex-vice president of A123 Systems, a formerly U.S.-listed Chinese company that has been sued multiple times for patent infringement and securities fraud.

35.    On this news, the Company's share price fell $0.35 per share, or more than 4%, to close at $8.05 per share on October 8, 2021.

36.    On November 2, 2021, Faraday Future announced that McBride was replacing Glasman as CFO. The Company claimed that "Mr. McBride succeeds Zvi Glasman, who resigned as CFO of the company to pursue other opportunities" and that "Mr. Glasman's departure from the Company is not a result of any disagreement with the Company's independent auditors or any member of management on any matter of accounting principles or practices, financial statement disclosure, or internal controls."

37.    The above statements identified in ¶ 36 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that, as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (2) that, as a result of the foregoing, Defendants' positive statements about the

Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

38.     On November 15, 2021, Faraday Future issued a press release entitled "Faraday Future Provides Business Update." Therein, Faraday Future announced that it would be unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 on time. Faraday Future further announced that its board of directors "formed a special committee of independent directors to review allegations of inaccurate disclosures," including the claims in the J Capital report. In greater part, the Company disclosed:

> Faraday Future Intelligent Electric Inc. ("Faraday Future" or the "Company") (NASDAQ: FFIE), a California-based global shared intelligent electric mobility ecosystem company, filed a Form 12b-25 notifying the SEC that it is unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 within the prescribed time period, and does not expect to file it by the extended filing date pursuant to Rule 12b-25. The Company is also unable to file its amended Registration Statement on Form S-1 (File No. 333-258993) (the "Form S-1/A") at this time.

> The Company's Board of Directors formed a special committee of independent directors to review allegations of inaccurate disclosures, including claims made in a report issued by an investor with a history of seeking to drive down public companies' stock prices for its own benefit. Faraday Future seeks to do business in the most ethical and transparent way. As a new public company, the Board, as part of its review, is seeking to ensure that the Company is adhering to the highest standards of conduct.

> The special committee's review is ongoing, and it is working diligently with independent counsel and advisors to complete its review as soon as possible. The Company is committed to working with the special committee to complete its work in order to re-establish timely financial reporting as soon as feasible. Until the review is complete, the Company is not able to file its Form 10-Q or Form S-1/A.

39.    On this news, the Company's share price fell $0.28 per share, or approximately 3%, to close at $8.83 per share on November 16, 2021.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Faraday Future securities between January 28, 2021 and November 15, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Faraday Future's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Faraday Future shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Faraday Future or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Faraday Future; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

46.     The market for Faraday Future's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Faraday Future's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Faraday Future's securities relying upon the integrity of the market price of the Company's securities and market information relating to Faraday Future, and have been damaged thereby.

47.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Faraday Future's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts

necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Faraday Future's business, operations, and prospects as alleged herein.

48. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Faraday Future's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

49. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

50. During the Class Period, Plaintiff and the Class purchased Faraday Future's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

51.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Faraday Future, their control over, and/or receipt and/or modification of Faraday Future's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Faraday Future, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

52.   The market for Faraday Future's securities was open, well-developed and efficient at all relevant times.   As a result of the materially false and/or misleading statements and/or failures to disclose, Faraday Future's securities traded at artificially inflated prices during the Class Period.  On February 1, 2021, the Company's share price closed at a Class Period high of $19.16 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Faraday Future's securities and market information relating to Faraday Future, and have been damaged thereby.

53.   During the Class Period, the artificial inflation of Faraday Future's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period,

Defendants made or caused to be made a series of materially false and/or misleading statements about Faraday Future's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Faraday Future and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

54. At all relevant times, the market for Faraday Future's securities was an efficient market for the following reasons, among others:

(a) Faraday Future shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Faraday Future filed periodic public reports with the SEC and/or the NASDAQ;

(c) Faraday Future regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Faraday Future was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

55. As a result of the foregoing, the market for Faraday Future's securities promptly digested current information regarding Faraday Future from all publicly

available sources and reflected such information in Faraday Future's share price. Under these circumstances, all purchasers of Faraday Future's securities during the Class Period suffered similar injury through their purchase of Faraday Future's securities at artificially inflated prices and a presumption of reliance applies.

56.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

57.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of

those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Faraday Future who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

58.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Faraday Future's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

60.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Faraday Future's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material

1  information about Faraday Future's financial well-being and prospects, as specified
2  herein.

3       62.    Defendants employed devices, schemes and artifices to defraud, while
4  in possession of material adverse non-public information and engaged in acts,
5  practices, and a course of conduct as alleged herein in an effort to assure investors of
6  Faraday Future's value and performance and continued substantial growth, which
7  included the making of, or the participation in the making of, untrue statements of
8  material facts and/or omitting to state material facts necessary in order to make the
9  statements made about Faraday Future and its business operations and future
10 prospects in light of the circumstances under which they were made, not misleading,
11 as set forth more particularly herein, and engaged in transactions, practices and a
12 course of business which operated as a fraud and deceit upon the purchasers of the
13 Company's securities during the Class Period.

14      63.    Each of the Individual Defendants' primary liability and controlling
15 person liability arises from the following facts: (i) the Individual Defendants were
16 high-level executives and/or directors at the Company during the Class Period and
17 members of the Company's management team or had control thereof; (ii) each of
18 these defendants, by virtue of their responsibilities and activities as a senior officer
19 and/or director of the Company, was privy to and participated in the creation,
20 development and reporting of the Company's internal budgets, plans, projections
21 and/or reports; (iii) each of these defendants enjoyed significant personal contact
22 and familiarity with the other defendants and was advised of, and had access to,
23 other members of the Company's management team, internal reports and other data
24 and information about the Company's finances, operations, and sales at all relevant
25 times; and (iv) each of these defendants was aware of the Company's dissemination
26 of information to the investing public which they knew and/or recklessly
27 disregarded was materially false and misleading.

28

64.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Faraday Future's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Faraday Future's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Faraday Future's securities during the Class Period at artificially high prices and were damaged thereby.

66.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Faraday Future was experiencing, which were

not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Faraday Future securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

67.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
#### Violation of Section 20(a) of The Exchange Act
#### Against the Individual Defendants

69.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70.    Individual Defendants acted as controlling persons of Faraday Future within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.     As set forth above, Faraday Future and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  December 23, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Charles H. Linehan*
_____
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Plaintiff Jian Zhou*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

## SWORN CERTIFICATION OF PLAINTIFF

Faraday Future Intelligent Electric, Inc., SECURITIES LITIGATION

I, Jian Zhou, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Faraday Future Intelligent Electric, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Faraday Future Intelligent Electric, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ____ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: Dec 17, 2021

Jian Zhou
_____
Jian Zhou

**Jian Zhou's Transactions in Faraday Future Intelligent Electric Inc. (FFIE)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 1/28/2021 | Bought | 1,000 | $16.6090 |
| 1/28/2021 | Bought | 500 | $15.6500 |
| 1/28/2021 | Bought | 500 | $15.9000 |
| 1/28/2021 | Bought | 1,000 | $16.6700 |
| 1/29/2021 | Bought | 1,000 | $23.6900 |
| 2/5/2021 | Bought | 57 | $17.5000 |
| 2/9/2021 | Sold | -457 | $16.6366 |
| 2/9/2021 | Sold | -500 | $16.6400 |
| 2/9/2021 | Sold | -100 | $16.6700 |
| 2/10/2021 | Sold | -1,000 | $16.4380 |
| 2/11/2021 | Sold | -1,500 | $16.0252 |
| 2/16/2021 | Bought | 175 | $16.6600 |
| 2/16/2021 | Bought | 1,000 | $16.8988 |
| 2/17/2021 | Bought | 70 | $18.1100 |
| 2/17/2021 | Bought | 129 | $17.5500 |
| 2/17/2021 | Bought | 1,000 | $18.1000 |
| 2/18/2021 | Sold | -874 | $17.4900 |
| 2/19/2021 | Bought | 500 | $17.3000 |
| 2/22/2021 | Bought | 500 | $18.3500 |
| 2/23/2021 | Sold | -2,000 | $16.7900 |
| 2/23/2021 | Bought | 500 | $16.5400 |
| 2/24/2021 | Bought | 1,000 | $15.7300 |
| 2/26/2021 | Sold | -500 | $13.9900 |
| 2/26/2021 | Bought | 500 | $13.9800 |
| 3/11/2021 | Bought | 500 | $12.6400 |
| 7/20/2021 | Bought | 500 | $13.8000 |
| 7/22/2021 | Sold | -1,000 | $13.6300 |
| 7/22/2021 | Sold | -500 | $16.7000 |
| 7/22/2021 | Bought | 500 | $17.8100 |
| 7/22/2021 | Bought | 500 | $13.8688 |