UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|---|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        (IN CHAMBERS) - MOTION TO DISMISS PLAINTIFFS'
AMENDED CLASS ACTION COMPLAINT (Dkt. 59, filed on
JULY 5, 2022)

## I.    INTRODUCTION

On December 23, 2021, plaintiff Jian Zhou filed a class action complaint against defendants Faraday Future Intelligent Electric, Inc. ("Faraday"), Carsten Breitfeld, Zvi Glasman, Walter McBride, Jordan Vogel, Aaron Feldman, and Yueting Jia.  Dkt. 1.

On May 6, 2022, plaintiffs filed the operative amended complaint ("Amended Complaint").  Dkt. 42 ("AC").  Plaintiffs comprise a class of persons that purchased or otherwise acquired Faraday securities between January 28, 2021, and April 14, 2022, (the "class period"), and/or beneficially owned and/or held Class A common stock in Property Solutions Acquisition Corp. ("PSAC") as of June 21, 2021, and were eligible to vote at PSAC's July 20, 2021 meeting.  AC ¶ 1.  Defendants are Faraday Future Intelligent Electric, Inc.; Carsten Breitfeld, the Chief Executive Officer of the Faraday legacy company ("Legacy Faraday") and CEO of Faraday, Zvi Glasman, the Chief Financial Officer of Legacy Faraday and of Faraday, Walter McBride, the Chief Financial Officer of Faraday from November 1, 2021, through the end of the class period, and Yueting Jia, the founder of Legacy Faraday and Chief Product and User Ecosystem Officer of Legacy Faraday and Faraday, (collectively, the "Faraday individual defendants"); Jordan Vogel,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

the Co-Chief Executive Officer of PSAC, and Aaron Feldman, the Co-Chief Executive Officer and Treasurer of PSAC, (collectively, the "PSAC defendants"). AC ¶ 32-40.[1]

The Amended Complaint alleges six claims for relief: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, against Faraday, the Faraday individual defendants, and the PSAC defendants; (2) violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in connection with plaintiffs' Section 10(b) claims, against the Faraday individual defendants and the PSAC defendants; (3) violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. §240.14a-9, against Faraday, the Faraday individual defendants, and the PSAC defendants; (4) violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in connection with plaintiffs' Section 14(a) claims, against the Faraday individual defendants and the PSAC defendants; (5) violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, against all defendants; and (6) violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, against all individual defendants.[2] See generally AC.

On July 5, 2022, defendants filed this motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act, ("PSLRA"), Pub. L. 104-67.[3] Dkt. 59 ("MTD"). On September 6, 2022, plaintiffs filed their opposition to defendants' motion to dismiss. Dkt. 60 ("Opp."). On

---

[1] The Amended Complaint additionally names as defendants David Amsterdam and Avi Savar, members of the PSAC board of directors, with respect to plaintiffs' withdrawn claims under the Securities Act of 1933. AC ¶ 247, 248.

[2] In their opposition, Plaintiffs withdraw their Section 11 and Section 15 claims under the Securities Act (Counts 5 and 6). See Opp. at 25 n.18. Accordingly, the Court **DENIES AS MOOT** defendants' motion to dismiss as to Counts 5 and 6.

[3] In connection with their motion to dismiss, defendants filed an unopposed request for judicial notice, requesting that the Court take notice of ten documents that are referenced in the Amended Complaint and/or publicly available. See Dkt. 59-2. The Court finds it appropriate to take judicial notice of the documents pursuant to Federal Rule of Evidence 201 and the incorporation by reference doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

October 6, 2022, defendants filed their reply in support of their motion to dismiss.  Dkt. 61 ("Reply").  Defendants' motion to dismiss is now before the Court.

On October 17, 2022, the Court held a hearing on defendants' motion to dismiss. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.     BACKGROUND

### A.     The Faraday Merger and the Challenged Statements

Faraday is a designer and manufacturer of electric vehicles, incorporated in Delaware and headquartered in Gardena, California.  AC ¶ 32, 54.  For the relevant period, the company's primary product focus was the "FF 91" crossover vehicle, plans for which Faraday revealed in 2017.  AC ¶ 56.  On July 21, 2021, Faraday went public following a merger of Legacy Faraday with PSAC, a special purpose acquisition company, which had gone public a year earlier.  AC ¶ 46.

The merger plans were first announced publicly on January 28, 2021, when PSAC and Legacy Faraday issued a press release announcing that they planned to merge, subject to stockholder approvals and other closing conditions.  AC ¶ 65, 66.  Upon closing, Legacy Faraday would acquire PSAC and the combined company, Faraday, would assume PSAC's listing on the NASDAQ.  AC ¶ 66.  On April 5, 2021, PSAC filed an S-4 registration statement with its preliminary proxy statement, registering common stock to be paid to Legacy Faraday stockholders as consideration in the merger.  AC ¶ 76, 134.  On June 24, 2021, PSAC filed a separate final proxy statement and prospectus.  AC ¶ 197.  Under the terms of the merger agreement, the PSAC stockholders were entitled to request redemption of their PSAC shares, prior to the merger vote, for $10 per share, or, if they did not redeem, to have their common stock converted to Faraday securities.  Dkt. 58.2 Exh. 6.

The statements at issue concern two representations.  The first representation (the "reservations statement") stated that Faraday "ha[d] received over 14,000 reservations" for the FF 91 vehicle.  AC ¶ 72.  This statement appeared in the January 28, 2021 press release announcing the planned merger of Legacy Faraday and PSAC (the "January 28 press release").  AC ¶ 74.  On March 12, 2021, Legacy Faraday published the text of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

Q&A interview (the "March Q&A"), which stated that the company "ha[d] existing demand for the FF 91 by way of more than 14,000 reservations." AC ¶ 75.

The second representation (the "expected schedule statement") stated, in various ways that FF 91 was expected to launch within twelve months of the merger. AC ¶ 74. This statement appeared in the January 28 press release. The S-4 filed on April 5, 2021, additionally stated that "FF intends to commercially launch FF 91 series within twelve months after closing of the Business Combination" and that "it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination." AC ¶ 76. A similar statement appeared in the June 24, 2021 version of the S-4. ¶ 81.

Both S-4s additionally included a statement that "[p]rior to market open January 28, 2021, PSAC and [Legacy Faraday] jointly issued a press release announcing the signing of the Merger Agreement, and PSAC filed a Current Report on Form 8-K announcing the execution of the Merger Agreement and discussing the key terms of the Merger Agreement in detail." AC ¶ 77, 82.

### B.     The J Capital Report and Special Committee Investigation

On October 7, 2021, J Capital Research published a report (the "J Capital Report") alleging that Faraday was unlikely to ever sell a car and that Faraday's claimed 14,000 deposits were fabricated because 78% of the reservations were made by a single, undisclosed affiliate of Faraday. AC ¶ 105-06. The J Capital Report further alleged that, while Faraday had represented that it would start production in September 2021, former engineering executives did not believe the car was ready for production. AC ¶ 107. Additionally, the J Capital Report stated that Jia had faced numerous financial and legal issues in China. AC ¶ 109.

On November 15, 2021, Faraday announced that its board of directors had formed a special committee of independent directors (the "Special Committee") to investigate the claims in the J Capital Report. AC ¶ 111. On February 1, 2022, Faraday announced that the Special Committee had completed its investigation. AC ¶ 115. The Special Committee found that the statements that Legacy Faraday had received more than 14,000 reservations for the FF 91 was "potentially misleading because only several hundred of those reservations were paid, while the others (totaling 14,000) were unpaid indications of interest." AC ¶ 115. The Special Committee investigation additionally identified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|---|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

certain weaknesses in corporate controls and recommended remedial actions to enhance oversight. AC ¶ 115-16. The day after the Special Committee publicly released its findings, Faraday's share price fell over 7%. AC ¶ 118.

### C.    The Confidential Witnesses

Four confidential witnesses who were formerly employed at Legacy Faraday provided information on the FF 91 reservations and the FF 91 production schedule. The first witness, FE-1, served as a Manufacturing Engineer/CNC Programmer from February 2018 to April or May 2020 at Faraday's headquarters. AC ¶ 87. She stated that there were various issues with FF 91 design and manufacturing when she worked at Legacy Faraday, including that "parts didn't fit." AC ¶ 89. Additionally, she stated that, by the time she left Legacy Faraday, much of the technology used by the company was outdated and the company was "still doing their R&D" and was having issues with suppliers who had not received payment. AC ¶ 90, 91.

The second witness, FE-2, served as Senior Global Director – Advanced Manufacturing Engineering and Contract Manufacturing from February 2015 to November 2018 and Vice President of Manufacturing and Supply Chain from November 2018 to May 2020, both at Faraday's headquarters. AC ¶ 92. FE-2 stated that, when she left, the company still had to go through validation and testing steps before production of FF 91 would be possible. AC ¶ 94. In the spring of 2020, Faraday had paused their building of the vehicles due to lack of funding. AC ¶ 93. Like FE-1, FE-2 stated that Faraday was having supply issues and that "[w]hen the funding came back, 'it would be longer than 12 months' to be production-ready with the added supply chain challenges created by the COVID-19 pandemic." AC ¶ 94.

The third witness, FE-3, served as Non-Production/Production Materials and Logistics Lead from June 2015 to September 2018 and as an IT Asset Manager from September 2018 to May 2020. AC ¶ 98. She helped set up IT for weekly and biweekly all-hands meetings where reservation numbers were discussed. AC ¶ 100. Breitfeld and Jia, among other officers, attended these meetings. AC ¶ 100. The fourth witness, FE-4, was employed as Vehicle Manager and Director—Global Accessories, Parts, Service and Delivery from October 2016 to June 2019. AC ¶ 101. FE-4 also stated that defendants had access to weekly and biweekly reports showing reservation figures throughout the class period and that the individual defendants discussed these reports at meetings with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

other officers.  AC ¶ 101.  Specifically, FE-4 stated that Jia provided updates on reservation numbers to employees during the all-hands meetings.  AC ¶ 103.

### III.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

Federal Rule of Civil Procedure 9(b) governs fraud claims, including securities fraud actions.  Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014).  A federal securities fraud suit is also subject to the demanding pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").  Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Ninth Circuit has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  In re Silicon Graphics, Inc., 183 F.3d 970, 974 (9th Cir. 1999). In determining whether a plaintiff has sufficiently pleaded scienter, a court must consider "whether the totality of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

deliberate or conscious recklessness." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp.</u>, 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting <u>No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.</u>, 320 F.3d 920, 938 (9th Cir. 2003)). Moreover, "[i]n determining whether a strong inference of scienter exists, [a court] must consider all reasonable inferences, whether or not favorable to the plaintiff." <u>Id.</u>

Certain statements are not actionable under the PSLRA because they fall within its safe-harbor provision. Specifically, the Safe Harbor Provision, 15 U.S.C. § 78u-5(c), provides that defendants shall "not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that" the statement is identified as forward-looking and accompanied by meaningful cautionary statements. Forward looking statements include statements of "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 78u-5(i)(1)(B).

## IV.   DISCUSSION

### A.   Section 10(b) Fraud Claim

Plaintiffs' Section 10(b) claim against Faraday, the Faraday individual defendants, and the PSAC defendants alleges that defendants caused plaintiffs to purchase Faraday's securities at artificially inflated prices by disseminating materially false and/or misleading information with respect to the reservations and expected production schedule. AC ¶¶ 180-91.

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss. <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 341-42 (2005).

Defendants' motion to dismiss focuses on elements (1) and (2) above, asserting that plaintiffs have not satisfied their pleading obligations under the PSLRA. MTD at 9-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|----------|--------------------------|------|------------------|
| Title    | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

1.   <u>Alleged Misrepresentations Regarding the 14,000 Reservations</u>

Defendants contend that plaintiffs have failed to plead any facts controverting the literal veracity of Legacy Faraday's statements regarding the 14,000 reservations. <u>Id.</u> According to defendants, the Special Committee's conclusion that the statement was "potentially misleading" because only a few hundred reservations had been paid is not an admission of falsity, and plaintiffs did not allege that defendants ever represented that the 14,000 reservations were paid. <u>Id.</u> at 10-11. Defendants further argue that the January 28 press release was accompanied by an investor presentation expressly informing investors that "the reservations reflected nothing more than 'user interest,'" among other qualifications suggesting that not all of the reservations had been paid. <u>Id.</u> at 11.

Additionally, defendants argue that plaintiffs "misplace reliance on [J Capital's] speculation that 78% of the 14,000 reservations were by one unidentified 'affiliate' of Faraday." <u>Id.</u> (quoting AC ¶ 129). Defendants state that, while Legacy Faraday's financial disclosures in December 2020 reported that a U.S. corporation deposited $11,635,000 as an advance to purchase FF 91 vehicles, "[t]his disclosure gives no basis for [J Capital's] speculative inference . . . that the 'advance to purchase' deposit was counted among the 14,000 reservations." <u>Id.</u> at 12. Moreover, defendants contend that this inference is inconsistent with the finding that only a few hundred of the reservations (as opposed to 78% of them) were paid. <u>Id.</u>

In their opposition, plaintiffs point out that defendants conceded that Faraday had received only several hundred paid reservations and that the internal investigation concluded that the statement was "potentially misleading." Opp. at 5 (citing AC ¶¶ 72, 280). Plaintiffs further contend that this statement was indisputably material to investors because the promise of 14,000 paid reservations "vastly overstates the approximately $54 million in revenue the Company would have achieved from the few hundred paid reservations." <u>Id.</u> Plaintiffs contend that defendants' statements accompanying the January 28 press release do not remedy the misrepresentations. <u>Id.</u> at 6. Specifically, plaintiffs argue that the statement that Faraday had not yet sold any production vehicle to customers does not indicate that the reservations were not paid. <u>Id.</u> And the projected sale of 2,400 vehicles in 2022, rather than suggesting that the 14,000 reservations were unpaid, simply suggests that only 2,400 vehicles would become available. <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|---|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

In their reply, defendants argue that plaintiffs fail to point to any industry standard defining reservations as paid deposits and point out that, in common parlance, "reservation" is often used to refer to "an *unpaid request* for priority." Reply at 5. Defendants additionally point to the version of the reservation website page available prior to the January 28 press release, which invited visitors to make a standard reservation with no deposit. Id. at 6-7.

At oral argument, counsel for the parties disagreed as to the most relevant version of the reservations website. Counsel for plaintiffs argued that the version from the period immediately following the January 28 press release, which only allowed website visitors to make paid reservations, suggested that the 14,000 reservations were paid. Counsel for defendants argued that versions of the website predating the January 28 press release, which allowed website visitors to make paid or unpaid reservations, were more relevant. Therefore, according to defendants, the reservations website does not support plaintiffs' argument.

The Court agrees with plaintiffs that the Amended Complaint adequately alleges that the reservations statement is a material misrepresentation, pursuant to the PSLRA pleading standards.

To prevail on their claim, plaintiffs "must show that [] defendant[s] made a statement that was *misleading* as to a *material* fact" such that there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 38 (2011) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 238 (1988)) (internal quotation marks omitted). Plaintiffs' allegations need not attack the literal veracity of the statement that defendants received 14,000 reservations. See Miller v. Thane Intern., Inc., 519 F.3d 879, 886 (9th Cir. 2008) (recognizing that "statements literally true on their face may nonetheless be misleading when considered in context"); see also McMahan & Co. v. Wherehouse Entertainment, Inc., 900 F.2d 576, 579 (2d Cir. 1990) ("[D]isclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers."). Rather, they must demonstrate that a particular statement, when taken in context, "conveyed a false or misleading impression." In re Convergent Technologies Sec. Litig., 948 F.2d 507, 512 (9th Cir. 1991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

Here, plaintiffs "specify each statement alleged to have been misleading," 15 U.S.C. § 78u-4(b)(1), by identifying the specific statements made by defendants that Legacy Faraday had received 14,000 reservations, see AC ¶¶ 74, 75. And, contrary to defendants' arguments, plaintiffs specify, with particularity, "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Specifically, plaintiffs allege that (1) the reservations statement was misleading because the user interest and potential revenue reflected by 14,000 paid reservations differs dramatically from the user interest and potential revenue reflected by several hundred paid reservations, AC ¶ 72; (2) the Special Committee that investigated Faraday's statements concluded that the reservations statement was "potentially misleading" because only a few hundred reservations were paid, AC ¶ 85; (3) according to the J Capital Report, an undisclosed affiliate of Legacy Faraday accounted for 78% of the deposits, AC ¶ 106; and (4) Faraday's stock price dropped by 7% once investors learned that Faraday had not received 14,000 paid reservations, AC ¶ 115-18.

Taken as true, these allegations are sufficient to demonstrate that the reservations statement was misleading because it gave investors a false impression that Faraday had received significantly more than several hundred paid reservations from independent potential customers. Defendants' statements accompanying the January 28 press release do not change this result. Specifically, the statement that the reservation numbers reflected user interest does not indicate that user interest was being measured by unpaid, rather than paid, reservations. And the statements that Faraday had not yet sold any vehicles and that it projected sale of 2,400 vehicles in 2022 do not directly convey that the reservations were not paid. Furthermore, the fact that website visitors may have, at certain times, had the opportunity to make paid as well as unpaid reservations does not clearly indicate that investors reading the press release would have known that only several hundred of the reservations were paid. This is particularly true in light of the different versions of the reservations website available around the time of the January 28 press release. While these statements and the reservations website may come into play at later stages of the litigation, plaintiffs have plausibly alleged that the significant difference between 14,000 paid reservations and several hundred paid reservations would have "been viewed by the reasonable investor as having significantly altered the total mix of information." Matrixx Initiatives, 563 U.S. at 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

      2.    <u>Alleged Misrepresentations Regarding the Expected Schedule</u>

Defendants assert that the expected schedule statement is not actionable because it is a forward-looking statement protected by the PSLRA's Safe Harbor, which precludes liability if (1) the statement was accompanied by cautionary warnings or (2) if defendants lacked knowledge of the statement's falsity at the time it was made. <u>Id.</u>  On the first Safe Harbor prong, defendants argue that the expected schedule statements were "quintessentially forward-looking" and "accompanied by meaningful cautionary statements," attaching a chart of such statements. <u>Id.</u> at 15; <u>see also</u> Burdick Decl., Chart A.  All of the documents on which plaintiffs' claims are based, defendants, contend, reference the risks and uncertainties involved and call out relevant risk factors that could cause Faraday not to meet the planned production schedule. <u>Id.</u> at 15.

The Court concludes that, as alleged, the expected schedule statements are forward-looking statements accompanied by meaningful cautionary warnings and, therefore, are protected by the Safe Harbor.  Plaintiff's contention that the expected schedule statements were not forward-looking because they were "statement[s] about the current state of [] progress" and thus "a statement of present or historical facts," Opp. at 9, is not persuasive.  Specifically, plaintiffs point to statements that Faraday was "less than a year away from production and meaningful revenue" and "is positioned to launch a production try-out in 9 months." <u>Id.</u>  According to plaintiffs, these are statements of present fact that describe the current progress toward commercial production. <u>Id.</u>

In <u>Wochos v. Tesla, Inc.</u>, 985 F.3d 1180 (9th Cir. 2021), the Ninth Circuit Court of Appeals rejected a similar argument, making clear that "it is not enough to plead that a challenged statement rests on subsidiary premises about how various future events will play out over the timeframe defined by the forward-looking statement." <u>Id.</u> at 1192.  In that case, plaintiffs argued that defendant Tesla's statements that it was "on track" to produce 5,000 vehicles per week within a certain timeframe was not forward-looking because it rested on an assumption of present fact, that is, that Tesla was currently positioned to produce the vehicles within the expected timeframe. <u>Id.</u>  The Ninth Circuit disagreed, concluding that this statement was forward-looking for PSLRA purposes because future projections "necessarily reflect[] an implicit assertion that the goal is achievable based on current circumstances," and "an unadorned statement that a company is 'on track' to achieve an announced objective, or a simple statement that a company knows of no issues that would make a goal impossible to achieve, are merely alternative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

ways of declaring or reaffirming the objective itself." Id. See also 15 U.S.C. § 78u-5(i)(1)(D) (defining forward-looking statement to include "any statement of the assumptions underlying or relating to any statement" otherwise considered forward-looking).

Defendants' challenged representations state that "FF 91 is targeted to launch within twelve months," Faraday "intends to commercially launch FF 91 series within twelve months," and Faraday "is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months." AC ¶¶ 74-81. These statements express "plans and objectives of management for future operations" and therefore constitute forward-looking statements under the Safe Harbor. See § 78u-5(i)(1)(B). Like the "on track" assertions addressed by the Ninth Circuit in Wochos, these statements may contain assumptions as to Faraday's then-present circumstances, but such "subsidiary premises about how various future events will play out" do not exempt statements of plans and objectives from the Safe Harbor. 985 F.3d at 1192.

Because defendants' statements are forward-looking, the Safe Harbor applies if they were accompanied by meaningful cautionary statements.[4] Plaintiffs argue that defendants' cautionary statements were inadequate because the references to potential significant delays were too general. Opp. at 9. The Court disagrees. "Adequate cautionary language under the PSLRA must identify 'important factors that could cause

---

[4] Plaintiffs appear to contend that they can avoid the Safe Harbor by alleging that defendants acted with actual knowledge, even if adequate cautionary warnings were given. The Safe Harbor precludes liability where the forward-looking statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements" or where "the plaintiff fails to prove that the forward-looking statement . . . was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1). The Ninth Circuit has made clear that the disjunctive "or" in the Safe Harbor confirms that "a defendant will not be liable for a false or misleading statement if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is false or misleading." In re Quality Systems, Inc. Sec. Litig., 865 F.3d 1130, 1141 (9th Cir. 2017). Therefore, if the forward-looking statements were accompanied by meaningful cautionary warnings, they fall under the Safe Harbor, regardless of the defendants' state of mind.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

actual results to differ materially from those in the forward-looking statement.'" In re Quality Systems, Inc. Sec. Litig., 865 F.3d 1130, 1148 (9th Cir. 2017) (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)). "[B]oilerplate language warning that investments are risky or general language not pointing to specific risks is insufficient to constitute a meaningful cautionary warning." In re Copper Mountain Sec. Litig., 311 F. Supp. 2d, 857 882 (N.D. Cal. 2004). Rather, "[t]he cautionary warning ought to be precise and relate directly to the forward-looking statements at issue." Id.

Here, defendants' warnings identified specific factors that could cause delay, including "lack of funding, supply shortages, design defects, talent gaps, and/or force majeure." Reply at 15. Defendants' references to these risks are sufficiently precise to convey meaningful warnings. See, e.g., Employers Teamsters Local Nos. 175 and 5050 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1132-33 (9th Cir. 2004) (approving of cautionary warning that "actual results will depend on a number of competitive and economic factors some of which may be outside the control of the Company," referring investors to SEC filings for a list of risks). Furthermore, defendants' warnings relate specifically to the forward-looking statements because they identify risks that could delay production such that the twelve-month timeline would be infeasible. Accordingly, the Safe Harbor applies, and plaintiffs have failed to state an actionable claim under Section 10(b) with respect to the expected schedule statement.

At oral argument, counsel for plaintiffs argued that defendants' cautionary statements were not specific enough because they did not warn of the exact risks that plaintiffs allege caused the delay, specifically, poor relationships with unpaid suppliers (as opposed to supply shortages) and research and development issues in connection with the FF 91 battery. Contrary to this argument, the legislative history of the PSLRA indicates that application of the Safe Harbor does not require that defendants identify all of the risks that ultimately caused the delay. See H.R. Rep. No. 104-369 at 43–44 (Conference Report 1995) ("Failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor."). See also In re Nuvelo, Inc. Secs. Litig., 2008 WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008) (explaining that the PSLRA does not "require specification of the particular factor that ultimately renders the forward-looking statement incorrect.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

Here, the cautionary statements identified specific, important risks that related directly to potential delay of the production schedule, including supply shortages, lack of funding, and design defects.  While these warnings may not have referenced all of the exact factors that ultimately delayed production, they "warned of risks of a significance similar to that actually realized," Harris v. Ivax Corp., 182 F.3d 799, 807 (11th Cir. 1999), and any failure to identify "the particular factor that ultimately render[ed] the forward-looking statement incorrect," In re Nuvelo, 2008 WL 5114325, at *16, is insufficient to avoid the Safe Harbor.

> 3. <u>Inference of Scienter</u>

Defendants argue that plaintiffs have failed to show that any defendant who purportedly made either of the statements at issue "possessed conflicting contrary information at the time and recklessly or intentionally disregarded it."  MTD at 19.

Plaintiffs contend that an inference of scienter is sufficiently supported by numerous allegations in the Amended Complaint.  First, plaintiffs point to the statements of the confidential witnesses regarding defendants' knowledge.  For the reservations statement, plaintiffs argue that they adequately plead scienter because defendants had reasonable grounds to believe that Faraday's reservation figures were false, in light of the statements of FE-3 and FE-4 that Jia and Breitfeld attended weekly and biweekly meetings in which reservation numbers were discussed and that defendants had access to reports showing reservation figures, which were discussed at meetings with officers of the company, including Jia.  Opp. at 12-13.  The fact that FE-3 and FE-4 left the company before the class period, plaintiffs argue, does not render them uncredible, and there is no reason to believe that production and discussion of these reports would have ceased during the class period.  Id. at 14.

For the expected schedule statement, plaintiffs contend that defendants knew or were reckless in not knowing that the expected schedule was infeasible, given the statements of FE-1 and FE-2 indicating that it would take longer than twelve months to become production ready.  Opp. at 13.  Plaintiffs argue that FE-2 served as Vice President of Manufacturing and Supply Chain until May 2020 and "explained that at the time she left, Faraday 'still had to go through a number of validation and testing steps before the car could be produced and go to market,' but that the Company 'had paused because of [lack of] funding.'"  Opp. at 8 (quoting AC ¶ 94).  Even if more funding was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|----------|-------------------------|---|------|------------------|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

acquired, FE-2 indicated that the timeline would not be met due to supply shortages resulting from Faraday's previous failure to pay suppliers and COVID-19-related supply chain issues. Id. FE-1 "confirmed that Faraday faced chronic supplier mistrust and debilitating supply issues." Id. (citing AC ¶ 91).

The inference of awareness created by the witnesses' statements, plaintiffs argue, are strengthened by the fact that "Faraday's sales and production of the FF 91 impacted Faraday's core business operations." Id. at 13. Plaintiffs state that "it 'would be absurd' to suggest that Faraday's executives were unaware of the true nature of the FF 91 reservations and their production issues given the singular importance of the FF 91 reservations to Faraday." Id. at 15 (citing In re LDK Solar Sec. Litig., 584 F. Supp. 2d 1230, 1249 (N.D. Cal. 2008)).

Finally, plaintiffs point out that they allege that defendant "Jia has been deemed unsuitable for a high position of publicly listed companies in China as a result of illegal provision of funding, discrepancies in company financials, and improper use of proceeds." Id. at 16 (citing AC ¶¶ 158-59). These allegations, according to plaintiffs, support and inference of unlawful fraudulent activity here. Id.

Defendants argue that these allegations are insufficient to support an inference of scienter under the PSLRA for several reasons. First, defendants challenge the relevance of the confidential witnesses, pointing out that none of them were employed at Legacy Faraday during the class period and do not meet the applicable standards for reliability and personal knowledge. Id. Defendants also challenge the witnesses' statements that Breitfeld, Glasman, and Jia had access to reservation reports discussed at company meetings and thus "knew or were severely reckless in disregarding the risk that their public statements about reservation figures were misleading to a reasonable investor." Id. (quoting AC ¶ 97). These statements, defendants contend, do not plead scienter because they fail to identify the internal reports or indicate what they say about paid reservations and they fail to allege that Glasman or any PSAC defendants attended the meetings. Id. at 19-20; reply at 17-19. As for the expected schedule statement, defendants cite Wochos for the contention that the employees' opinions are not sufficient to demonstrate defendants' point of view where there are no specific allegations that defendants in fact shared employees' view. Reply at 20 (citing Wochos, 985 F.3d at 1194).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

With respect to plaintiffs' core operations argument, defendants contend that the case on which plaintiffs rely, Berson v. Applied Signal Tech, Inc., 527 F.3d 982, 989 (9th Cir. 2008) is distinguishable. Reply at 20-21. Defendants argue that here, unlike in Applied Signal, "there is no mission-critical, undisclosed fact alleged . . . that simply could not have escaped the notice of any and every [defendant] and that rendered Faraday's [statements] materially false when made." Id. at 21. Finally, defendants contend that Jia's past issues in China are irrelevant and do not give rise to an inference of scienter against any defendant. Id. at 22.

The Court concludes that plaintiffs have sufficiently pled scienter with respect to the reservations statement. The statements of FE-3 and FE-4 that reservations and reservations reports were discussed at regularly held meetings, which the Faraday individual defendants attended, in conjunction with the alleged fact that FF 91 production and sale constituted the core business operation of Faraday are adequate to "giv[e] rise to a strong inference that [defendants] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

In Applied Signal, the Ninth Circuit concluded that an inference of scienter was sufficiently supported by plaintiffs' contention that high-level managers directly responsible for day-to-day operations must have known that statements about backlogs were misleading when made, by reason of their positions of authority and the fact that the backlog issues related to the companies' core operations, such that "it would be absurd to suggest that top management was unaware of them." 527 F.3d at 989. Here, plaintiffs have alleged that the production and sale of FF 91 was the core of Faraday's business operations, and the contention that high-level officers within Legacy Faraday and PSAC would not recognize that the 14,000 reservations did not constitute paid reservations is not persuasive. Moreover, the inference of scienter is stronger here than in Applied Signal, where the plaintiffs did not allege any particular facts supporting their inference, id. at 987, because plaintiffs here have additionally alleged that, according to confidential witnesses, the reservation numbers were discussed at regularly held meetings attended by Jia and Breitfeld and were covered in reports to which defendants had access. Defendants' arguments as to the credibility of the witnesses' statements, which must be taken as true at this stage, raise issues of fact that are better addressed at a later stage of litigation and do not alter the result here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|----------|-------------------------|------|------------------|
| Title    | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

The Court does not reach the question of scienter with respect to the expected schedule statements because the Amended Complaint has failed to state an actionable claim under the PSLRA based on the expected schedule statements.

4. <u>Makers of the Statements at Issue</u>

Defendants argue that the Section 10(b) claims against the individual defendants[5] must be dismissed because the Amended Complaint fails to allege that these defendants made one or both of the allegedly false statements. MTD at 7. The Court only analyzes the sufficiency of plaintiffs' allegations that the individual defendants made the reservations statement, in light of the Court's finding that plaintiffs fail to state an actionable claim with respect to the expected schedule statement.

Defendants contend that a defendant may be held liable under Section 10(b) for a false and misleading statement only if the defendant is the "maker of the statement," meaning "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." <u>Id.</u> at 7-8 (quoting <u>Janus Cap. Grp., Inc. v. First Derivative Traders</u>, 564 U.S. 135, 142 (2011)). Defendants argue that, while Glasman and Jia served as officers of Legacy Faraday and Faraday, this status is insufficient, on its own, to establish a defendant as the maker of a statement. <u>Id.</u> (citing <u>Hampton v. Aqua Metals, Inc.</u>, WL 6710096, at *17 (N.D. Cal. Nov. 16, 2020)). According to defendants, plaintiffs have not set forth any additional facts attributing the challenged statements to either of them. <u>Id.</u>

With respect to each individual defendant, plaintiffs have set forth allegations indicating that defendants possessed the power and authority to control the contents of the press release and SEC filings. Vogel and Feldman are alleged to be the Co-CEOs, of PSAC, the entire purpose of which was to effect a business combination, which ended up being the merger with Legacy Faraday that Faraday and PSAC jointly announced in the January 28 press release. AC ¶¶ 38, 39, 45, 66. Jia is alleged to be the founder and Chief Product and User Ecosystem Officer of Legacy Faraday and Glasman is alleged to be the Chief Financial Officer of Legacy Faraday, the primary purpose of which is alleged to be

---

[5] In their opposition, plaintiffs withdraw all claims against defendant McBride. Opp. at 7, n.9. Accordingly, the Court **DENIES AS MOOT** the motion to dismiss as to defendant McBride and does not address defendants' arguments as to him in this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

the design and manufacturing of the FF 91.  AC ¶¶ 34, 36, 53, 56.  Further, the Amended Complaint alleges that "the Faraday [i]ndividual [d]efendants and PSAC [d]efendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications."  AC ¶ 42.  The Amended Complaint additionally alleges that the individual defendants "were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected."  AC ¶ 42.

Thus, for the purposes of this motion to dismiss, the Court concludes that plaintiffs have adequately pled that the individual defendants made the challenged statements.  See In re Rocket Fuel, Inc. Sec. Litig., 2015 WL 9311921, *10 (N.D. Cal. Dec. 23, 2015) (findings complaint sufficient under Janus where plaintiffs alleged company officers "possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations.").

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' Section 10(b) claim as to the reservations statement and **GRANTS** defendants' motion to dismiss plaintiffs' Section 10(b) claim as to the expected schedule statement **WITH LEAVE TO AMEND.**

### B.     Proxy Violation Claim Under Section 14(a)

Section 14 of the Exchange Act regulates the solicitation of proxies with respect to any security registered under the Act.  SEC Rule 14a–9(a), which was promulgated under Section 14(a), provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

Plaintiffs' Section 14(a) claim, which is brought on behalf of all former shareholders of PSAC who were entitled to vote on the merger of PSAC and Legacy Faraday, alleges that defendants' statements in the proxy statement and proxy solicitation materials contained the false and misleading statements regarding the reservations and expected schedule, thereby misleading shareholders and denying them the opportunity to make a fully informed decision in voting on the merger and/or exercising their conversion right to receive $10.00 per share of PSAC stock.  AC ¶¶ 205-218.

        1.      Standing

Defendants first argue that plaintiffs lack standing to bring the Section 14(a) claim because it is a derivative claim that belongs to Faraday.  MTD at 22.

The determination of whether a claim is a derivative claim or a direct claim is governed by Delaware law, as Delaware is the state of Faraday's incorporation.  See New York City Emples' Ret. Sys. v. Jobs, 593 F.3d 1018, 1022 (9th Cir. 2010) (overruled on unrelated grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012)).  Delaware law provides that whether a Section 14 claim is direct or derivative depends on who "suffered the alleged harm—the corporation or the suing stockholders and who would receive the benefit of recovery."  Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004).  Under Federal Rule of Civil Procedure 23.1, shareholders bringing a derivative action to recover for a harm suffered by a corporation must comply with certain pleading requirements, including the requirement that plaintiffs state "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and [] the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).

According to defendants, plaintiffs' theory of damages is an economic loss that PSAC and all of its equity stockholders would suffer equally.  MTD at 22.  Defendants argue that plaintiffs' Section 14(a) claim related to voting for the merger must be distinguished from plaintiffs' Section 14(a) claim relating to the failure of stockholders to seek redemption of their PSAC stock at $10 per share.  Reply at 22-23.  Defendants contend that plaintiffs lack standing to bring the former claim because it is a derivative claim, even if the latter is a direct claim.  Id. at 24.  The claim that plaintiffs lost money by voting for the merger because Faraday is allegedly worth less than the $10 share, according to defendants, is "a price-based claim that PSAC paid too much for Legacy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|---|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

Faraday, which affects all [Faraday] stockholders equally." Id. at 25 (citing In re J.P. Morgan Chase & Co. Shareholder Litig. v. Harrison, 906 A.2d 766, 774 (2005)). Accordingly, defendants argue that the Section 14(a) claim based on the merger vote must be dismissed.

Plaintiffs' Section 14(a) claim based on the merger vote states that class members "were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a direct and proximate result of [defendants'] untrue statements and omissions." AC ¶ 214. Put simply, plaintiffs allege that defendants' representations deprived them of their right to make a fully informed vote. In Jobs, the Ninth Circuit explained that, under Delaware law, "depriv[ation] of the right to a fully informed vote . . . is independent of any injury to the corporation and implicates a duty of disclosure owed to shareholders." 593 F.3d at 1022. See also In re Tyson Foods, Inc., 919 A.2d 563, 601 (Del. Ch. 2007) ("When a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is almost always an individual, not corporate, harm). The fact that uninformed votes on the merger may have a negative impact on the company does not alter shareholders' standing to bring claims in connection with their individual right to a fully informed vote. Accordingly, the Court concludes that the Section 14(a) claim is direct, and plaintiffs have standing.

2.     Sufficiency of Allegations

Next, defendants move to dismiss the Section 14(a) claim on the ground that it fails to allege sufficient facts under the PSLRA's pleading standards. As an initial matter, the Court must address the applicable pleading standard, as to which the parties disagree. The pleading requirements in the PSLRA and Federal Rule of Civil Procedure 9(b) apply to claims sounding in fraud. See Desaigoudar v. Meyercord, 223 F.3d 1020, 1022-23 (9th Cir. 2000). The Amended Complaint states that the Section 14(a) claim does not sound in fraud, and Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct. AC ¶ 206. Where a plaintiff disclaims reliance on fraud, courts may look to the allegations to determine whether the complaint still sounds in fraud. See id. at 1022, n.5 (agreeing with district court's rejection of plaintiff's claim that its Section 14(a) claim sounded in negligence after "carefully reviewing the complaint's language," which alleged knowing and intentional misconduct); City of Pontiac General Employees Ret. Sys. v. Bush, 2022 WL 1467773, at *3 n.1 (N.D. Cal. Mar. 1, 2022) (determining that complaint clearly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

sounded in fraud, in light of allegations of knowing and reckless conduct, contrary to plaintiff's disclaimer).

Here, the Section 14(a) claim "clearly sounds in fraud," <u>Desaigoudar</u>, 233 F.3d at 1022 n.5. The Section 14(a) claim rests on all of the same representations as the Section 10(b) fraud claim, and plaintiffs' allegations, despite the disclaimers, "pleads a culpability that indicates the Section 14(a) claim is based on fraud." <u>City of Pontiac</u>, 2022 WL 1467773, at *3 n.1. <u>See, e.g.</u>, AC ¶ 42 ("Because of their positions with the Company, and their access to material information available to them but not to the public, the [individual defendants] knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.").

Accordingly, the Court concludes that the PSLRA and Rule 9(b) pleading requirements apply to plaintiffs' Section 14(a) claim. As discussed with respect to plaintiffs' Section 10(b) claim, plaintiffs have failed to plead sufficient facts demonstrating that the expected schedule statements fall outside of the PSLRA Safe Harbor.

In addition to reiterating the pleading arguments made with respect to Section 10(b), defendants contend that plaintiffs have failed to satisfy their pleading obligations because they have not alleged how "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was 'an essential link' in the accomplishment of the transaction" that caused their loss. <u>Id.</u> (quoting <u>Jobs</u>, 593 F.3d at 1022 (9th Cir. 2010)).

The Court disagrees. Plaintiffs have stated that the challenged statements and omissions, which they allege appeared in the proxy statement, "were material to a reasonable investor," "would tend to induce a reasonable investor to misjudge the value of the Company's securities," and "did induce[] reasonable investors to misjudge the value of the Company's common stock." AC ¶¶ 166, 169-71. <u>See In re Hot Topic Sec. Litig.</u>, No. 13-cv-02939, 2014 WL 7499375, at *11 (C.D. Cal. May 2, 2014) (concluding plaintiffs had satisfied their pleading obligations by alleging that "the Proxy Statement makes a series of misrepresentations and omissions that misled investors into believing that $14.00 per share was a fair transaction."). Thus, to the extent that plaintiffs have alleged that the proxy statement contains the challenged statement and omissions, they have pled sufficient facts as to an essential link.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

3.    Incorporation by Reference

Defendants additionally argue that the S-4 registration and proxy statement do not include the reservations statement (which plaintiffs concede) or incorporate it by reference. Id. at 13. Plaintiffs point to a statement in the "Background of the Business Combination" of the S-4 referencing the January 28 press release "announcing the signing of the Merger Agreement" and PSAC's filing of a Current Report on Form 8-K "discussing the key terms of the Merger Agreement." Id. (quoting S-4). These statements, defendants contend, fall far short of the SEC requirements for incorporating a filing by reference, which require that the registrant make an express statement clearly describing the specific location of the information, identifying the document where the information is located, and identifying the location of the information within the document. Id. Accordingly, defendants contend that plaintiffs cannot state a claim based on the 14,000 reservations under Section 14 (in connection with the proxy statement). Id. at 14.

Plaintiffs make several arguments in support of incorporation by reference. First, plaintiffs argue that defendants' reliance on the SEC regulations governing incorporation by reference of documents into registration statements do not apply to incorporation by reference of documents into proxy statements. Opp. at 21. Second, plaintiffs argue that, even if they do apply, the regulations' requirements are met here. Id. Plaintiffs point out that the proxy statement expressly states that it "incorporates important business and financial information about PSAC that is not included in or delivered with th[e] proxy statement," id. (quoting dkt. 59, Exh. 7 at 139), and argue that the reservations statement constitutes important business and financial information, Opp. at 21. Plaintiffs further argue that the proxy statement offers two specific locations where an investor can obtain the press release because it directs investors to the company's filings on www.sec.gov, where the press release was filed, and provides the contact information of Vogel. Id.

Defendants respond by pointing out that PSAC complied with the SEC requirements for incorporation by reference with respect to other documents, such as a proposed 2021 Stock Incentive Plan, as to which the S-4 stated "[t]he following description is qualified in its entirety by reference to the plan document, . . . incorporated into this proxy statement . . . by reference." Id. at 9 (quoting S-4 at 129). Defendants argue that the lack of similar language in relation to the press release indicates that it was not incorporated by reference. Id. at 9-10. Defendants further point out that the general

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|----------|--------------------------|------|------------------|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

incorporation by reference provision on which plaintiffs rely does not reference the press release by name and that the proxy only references the press release as part of a chronology of events leading up to the merger. Id. at 10. Neither mentions the reservations statement explicitly. Id.

The Court agrees with defendants that plaintiffs have failed to show incorporation of the reservations statement into the proxy statement by reference. Federal courts do not find incorporation of documents by reference into proxy statements based on general references to the documents but rather require a "specific[] request[] that they be treated as part of the proxy material or incorporated [] into the materials by reference." Kelley v. Rambus, Inc., 2008 WL 5170598, at *5 (N.D. Cal. Dec. 9, 2008), aff'd, 384 F. App'x 570 (9th Cir. 2010) (quoting Stricklin v. Ferland, 1999 WL 89694, at *2 (E.D. Pa. Jan. 19, 1999)). The general incorporation by reference provision in the proxy statement, which states that it "incorporates important business and financial information about PSAC that is not included in or delivered with th[e] proxy statement," does not specifically incorporate the press release. This provision is distinct from the prospectus supplement provision plaintiffs point to in SEC v. RPM International, Inc., 282 F. Supp. 3d 1, 15 (D.D.C. 2017). In RPM International, the document deemed incorporated by reference into the prospectus supplement was filed with the SEC and the prospectus supplement explicitly stated that it incorporated by reference accompanying information filed with the SEC. 282 F. Supp. 3d at 15. Here, by contrast, the incorporation by reference provision is more general and does not specifically address the reservation statement, the press release, or SEC filings.

While the SEC's regulations for incorporation by reference apply to registration statements, not proxy statements, they are informative to the extent that they articulate the level of specificity that would inform readers that a document is incorporated by reference. The regulations provide that the host document must:

[i]nclude an express statement clearly describing the specific location of the information you are incorporating by reference. The statement must identify the document where the information was originally filed or submitted and the location of the information within that document. The statement must be made at the particular place where the information is required, if applicable. Information must not be incorporated by reference in any case where such incorporation would render the disclosure incomplete, unclear, or confusing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                          'O'

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

17 C.F.R. § 240.12b-23(e).  The general directions to the SEC website and to Vogel for further information do not "clearly describ[e] the specific location of the" press release and do not "identify the document where the information was originally filed or submitted and the location of the [reservations statement] within that document."  Id.  See also Kelley, 2008 WL 5170598, at *5 (finding no incorporation by reference where "proxy statements merely noted—as is customary—that copies of the financial statements could be obtained from [defendant] free of charge").  Likewise, neither the general incorporation by reference provision nor the reference to the press release in the chronology of events includes an express statement clearly describing the specific location of the press release.  Accordingly, the Court finds that plaintiffs have failed to allege that the reservations statement was incorporated by reference into the proxy statement.

At oral argument, counsel for plaintiffs argued that, even if the reservations statement is not incorporated by reference into the proxy statement, defendants violated Section 14(a) by failing to include in the proxy materials a statement clarifying that the 14,000 reservations, previously discussed in the January 28 press release and the March Q&A, were unpaid.

To state a claim under Section 14(a) based on an omission, plaintiffs must allege that the proxy statement "omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).  "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."  TSC Indus., Inc. v. Northway, Inc., 426 Y.S. 438, 449 (1976).  The materiality requirement is satisfied "when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Matrixx Initiatives, 563 U.S. at 38 (internal quotation marks omitted).  "The 'total mix' of information 'normally includes information that is and has been in the readily available general public domain and facts known or reasonably available to shareholders.'"  Anschutz v. Pacific Premier Bancorp, Inc., 2020 WL 7049543, at *4 (C.D. Cal. Oct. 21, 2020) (quoting Kapps v. Torch Offshore, Inc., 379 F.3d 207, 216 (5th Cir. 2004)); see also SEC v. Mozilo, 2009 WL 3807124, at *10 (C.D. Cal. Nov. 3, 2009) (explaining that the "total mix" of information "includes information that is 'readily' or 'reasonably' available to an investor.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|----------|--------------------------|------|------------------|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

The Amended Complaint alleges that defendants "materially misled the investing public . . . by omitting to disclose material facts necessary to make [d]efendants' statements . . . not false and/or misleading." AC ¶ 148. As discussed above with respect to plaintiffs' Section 10(b) claim, plaintiffs have satisfied the PLSRA pleading requirements in alleging that the difference between 14,000 paid reservations and several hundred paid reservations would have "been viewed by the reasonable investor as having significantly altered the total mix of information." Matrixx Initiatives, 563 U.S. at 38. Furthermore, plaintiffs have set forth sufficient factual allegations to show that the 14,000 reservations statement was in the "total mix" of information readily or reasonably available to investors because it was made in the January 28 press release announcing the merger, it was made again in the March Q&A with Breitfeld, and it was included in Faraday's SEC filings. Thus, while plaintiffs have failed to allege that the 14,000 reservations statement appears in the proxy statement, they have stated a Section 14(a) claim based on the omission of information necessary to enable shareholders to understand user interest in Faraday's product.[6]

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' Section 14(a) claim based on the theory of omission and **GRANTS** defendants' motion to dismiss plaintiffs' Section 14(a) claims based on the expected schedule statement and the incorporation by reference of the reservations statement **WITH LEAVE TO AMEND.**

### C.     Control Liability Under Section 20(a)

Plaintiffs allege that the Faraday individual defendants and the PSAC defendants are additionally liable for the Section 10(b) and Section 14 violations pursuant to a control liability theory under Section 20(a). AC ¶¶ 192-96, 219-30.

---

[6] In a footnote, defendants argue that plaintiffs have failed to allege that the individual defendants constitute makers of the challenged statements for the purposes of Section 14. MTD at 8, n.2. As discussed above with respect to the Section 10(b) claim, plaintiffs have adequately alleged that the individual defendants had "the ability and opportunity to prevent the[] issuance [of the SEC filings and press releases] or to cause them to be corrected." AC ¶ 42. See IV.A.4 supra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-09914-CAS (JCx) | | Date | October 20, 2022 |
|---|---|---|---|---|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | | |

In order to prove a prima facie case under section 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws, and (2) that the defendant exercised "actual power or control" over the primary violator. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).

Defendants move to dismiss plaintiffs' control liability claims, arguing that, even if plaintiffs had successfully alleged primary violations, they cannot show that all defendants have secondary liability for violations of Section 10(b) and Section 14 under a control theory. MTD at 21.

Plaintiffs counter that the Amended Complaint properly alleges control liability under Section 20(a) because plaintiffs adequately allege primary violations of the securities laws and that defendants exercised control over the primary violator. Opp. at 16-17. On the question of control, plaintiffs contend that defendants Vogel and Feldman signed and "were involved in the formulation of" the registration statement." Id. at 17. Plaintiffs argue that "by nature of their positions of power in PSAC and control over misleading company documents," these defendants constitute control persons. Id. Jia is likewise a control person, according to plaintiffs, because his role allowed him sufficient control over Faraday's day-to-day operations and documents, and plaintiffs' witnesses stated that Jia and other officers provided updates on reservation numbers at meetings. Id. And Glasman is a control person, plaintiffs argue, because he had control over financial statements and managed day-to-day operations. Id. at 18.

Furthermore, plaintiffs contend, defendants are control persons by reason of their authorization of misleading public disclosures, namely the reservations statement in the January 28 press release. Id. Plaintiffs analogize to SEC v. Todd, in which the court found that defendants acted as control persons with respect to company statements because they participated in a press release that reported misleading information. Id. (citing SEC v. Todd, 642 F.3d 1207, 1223 (9th Cir. 2011)). According to plaintiffs, because PSAC and Faraday jointly issued the January 28 press release, Breitfeld, Vogel and Feldman, as well as all named defendants who held senior authority positions, were aware of and in control of misleading information disseminated to the public. Id.

Defendants respond by arguing that plaintiffs fail to acknowledge that Faraday defendants were not employed by PSAC and PSAC defendants were not employed by Faraday, which, according to defendants, means that all defendants could not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09914-CAS (JCx) | Date | October 20, 2022 |
|----------|-------------------------|------|------------------|
| Title | JIAN ZHOU V. FARADAY FUTURE INTELLIGENT ELECTRIC INC., ET AL. | | |

exercised control over one another.  Reply at 22.  Further, defendants challenge plaintiffs' reliance on the individual defendants' titles, arguing that courts reject inferences of control based on titles and positions.  Id. (citing Todd, 642 F.3d at 1223).

The Court concludes that, to the extent that the primary violations are adequately alleged, plaintiffs have sufficiently alleged control liability for purposes of this motion to dismiss.  The Amended Complaint alleges that "by virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public," the individual defendants "had the power to influence and control and did influence and control," "the content and dissemination of the [challenged] statements."  AC ¶¶ 194, 222.  Defendants are correct that "[t]he fact that a person is a CEO or other high-ranking officer within a company does not create a presumption" of control.  Todd, 642 F.3d at 1223.  "Rather, indicia of 'control' include whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements."  Id. (citing Howard, 228 F.3d at 1065).  But, contrary to defendants' argument, plaintiffs have not simply relied on job titles to demonstrate control.  Instead, plaintiffs have alleged that defendants controlled day-to-day operations and the content and dissemination of the challenged statements, signed the SEC documents, and/or issued the press release.  At this stage, these allegations, taken as true, are sufficient to demonstrate control liability.

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' Section 20(a) claims to the extent that plaintiffs have alleged primary violations of the securities laws.

**V.      CONCLUSION**

In accordance with the foregoing, the Court **DENIES** in part and **GRANTS** in part defendants' motion to dismiss **WITH LEAVE TO AMEND.**  Plaintiff shall have up to and including November 17, 2022, within which to file an amended complaint.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|--|--|----|---|----|
| Initials of Preparer | | | CMJ | |