Pamela S. Palmer (SBN 107590)
Alan Kessel (SBN 130707)
TROUTMAN PEPPER HAMILTON SANDERS LLP
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800
Facsimile: 213.928.9850
Email: pamela.palmer@troutman.com
Email: alan.kessel@troutman.com

Jay A. Dubow (PHV; PABN 41741)
Erica Hall Dressler (PHV; PABN 319953)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Two Logan Square, Eighteenth & Arch
Philadelphia, PA 19103
Telephone: 215.891.4000
Facsimile: 215.891.4750
Email: jay.dubow@troutman.com
Email: erica.dressler@troutman.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAN ZHOU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., CARSTEN BREITFELD, ZVI GLASMAN, WALTER J. MCBRIDE, JORDAN VOGEL, AARON FELDMAN, and YUETING JIA,<br><br>Defendants. | Case No. 2:21-cv-09914-CAS-JC<br><br>Hon. Christina A. Snyder<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RECONSIDERATION OF DECISION FINDING SECTION 14(a) PROXY OMISSION CLAIM**<br><br>Date:    December 12, 2022<br>Time:   10:00 a.m.<br>Place    Courtroom 8D via zoom |

In their attempt to skate dismissively past Defendants' Motion for Reconsideration, Plaintiffs overstate the standards for reconsideration and misstate the controlling law governing actionable proxy omissions.

**STANDARDS FOR RECONSIDERATION**

Plaintiffs devote most of their brief trying to raise the bar for reconsideration, even suggesting that the Court itself is constrained. To the contrary, even though reconsideration has been described as an "extraordinary" remedy, this characterization is to protect courts from burdensome requests for reconsideration—it is not to limit or restrain courts from undertaking reconsideration where appropriate to address a clear error. Nothing in Plaintiffs' string cite or in Local Rule 7-18[1] contradicts the standards governing reconsideration set forth in Defendants' moving papers—*i.e.*, that a district court "possesses the inherent power to reconsider, rescind, or modify an interlocutory order *for cause seen by it to be sufficient*." *City of Los Angeles Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis added). "Although the Federal Rules of Civil Procedure and [Local Rules] create avenues for reconsideration, *they do not abridge the court's inherent, common law-based authority to grant relief from interlocutory orders*." *Beal v. Royal Oak Bar*, 2016 WL 3230887, at *2 (N.D. Cal. June 13, 2016) (emphasis added). Courts in this Central District are free to exercise their discretion to reconsider, and *should*

---

[1] Opp. at 1, string citing cases that are distinguishable and also uniformly recognize the court's discretion to reconsider a ruling that appears to have been clearly erroneous: *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858-59 (9th Cir. 2022) (affirming denial of reconsideration where defendants could have timely presented evidence in support of compelling arbitration, but that evidence would not have made a difference in the district court's decision); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (affirming denial of reconsideration where plaintiff could have timely advanced new arguments, but failed to do so); *Metoyer v. Chassman*, 248 F. App'x 832, 835 (9th Cir. 2007) (affirming denial of reconsideration where, with reasonable diligence, plaintiff could have timely discovered and presented new evidence, but failed to do so); *Kopelev v. Boeing Co.*, 2021 U.S. Dist. LEXIS at *2 167261, at *5 (C.D. Cal. July 29, 2021) (denying reconsideration of dismissal with prejudice based on issues previously raised in opposition to motion to dismiss which the court already addressed).

*do so* to address and correct a "clear error" in an interlocutory order. Opening Br. p. 1-2 & n.1 (citing cases).

Plaintiffs also contend that Defendants have failed to demonstrate their own *bona fides* in seeking reconsideration under Local Rule 7-18(a), arguing that there was no "material difference in fact or law from that presented to the court" that Defendants lacked a reasonable opportunity to address. Opp. at 2 & n.2. This contention ignores undisputable facts—starting with the fact that the Second Amended Complaint ("Complaint") "presented to the Court," simply does not assert a proxy omission claim. The statement that legacy Faraday had received 14,000 reservations *was not made or incorporated by reference in the Proxy* – as this Court has found. Dkt. 64 (Oct 20 Order) at 23. Nor does the Complaint plead "in the alternative" that any statement regarding the 14,000 reservations *should have been made in the Proxy*, or that its omission rendered any statement *made in the Proxy* materially misleading, as required to state a proxy claim under SEC Rule 14a-9 (17 C.F.R. 240. 14a-9). Nor does the Complaint satisfy Plaintiffs' obligation under the PSLRA to "specify the reason or reasons why" any statement in the Proxy was rendered misleading by omission. 15 USC § 78u-4(b)(1).

Indeed, Plaintiffs first advanced their proxy omission claim in their Opposition to Defendants' Motion to Dismiss, giving no citation to the Complaint and offering no explanation as to how the purported omission rendered any statement *in* the Proxy misleading. Dkt. 60 at 30. As previously noted, this Court recognized this fatal pleading deficiency in its Tentative Ruling prior to the October 17 hearing, noting that "*this [proxy omissions] argument is raised for the first time in plaintiffs' opposition and thus cannot save the Amended Complaint for the purposes of this motion to dismiss.*" Tentative Ruling at n.6 (emphasis added).

Seeking to persuade the Court otherwise, Plaintiffs' counsel in oral argument pointed to two boilerplate, factually non-specific paragraphs of the Complaint–one concerning the 10(b) claim (Dkt. 42 ¶ 148) and one concerning the section 14(a)

claim (Dkt. 42 ¶ 208). Paragraph 148 makes no reference to the Proxy, however, and is merely a conclusory allegation of an unspecified omission in an unspecified location. Similarly, Paragraph 208 makes an unspecified allegation of omission in the Proxy, but does not identify any facts allegedly omitted. Thus, these two conclusory paragraphs are a null set with respect to pleading any misrepresentation by omission in the Proxy.

The transcript of oral argument (delivered on November 23), reflects an admission by Plaintiffs' counsel "*that the material omission argument is poorly stated ... in our opposition.*" Ex. A Transcript at 11 (emphasis added). He also conceded that "*it['s] true what defendants say. Certainly the securities laws, standing on their own don't require that ... companies disclose all material facts*." Ex. A Transcript at 12 (emphasis added). Counsel went on to make a *new* argument that "*Delaware law* imposes an obligation to disclose all material facts and courts in the Ninth Circuit [citing none] have recognized that that enforces an obligation for the purposes of section 14 under federal law[.]" Ex. A Transcript at 12. (emphasis added). There is *no* Delaware law claim in this case, however, and Plaintiffs' counsel cited no decisions by any "court in the Ninth Circuit" adopting any such Delaware law as sufficient to plead a violation of Section 14(a). Moreover, Plaintiffs' counsel only cited the two boilerplate paragraphs discussed above in a rebuttal argument—after Defendants' counsel had finished oral argument. Ex. A. Transcript at 23-24.

Following the hearing, the Court reversed course from the Tentative Ruling and, in its October 20 Order, found a proxy omission claim under federal law based on the "total mix of information" available to stockholders *outside* the Proxy—an argument that Plaintiffs did not make and that, Defendants respectfully submit, is unprecedented and clearly erroneous as a matter of law. These circumstances fall squarely within Local Rule 7-18(a): *i.e.*, Defendants could not have anticipated in advance, briefed and argued the merits of the Court's ruling on Plaintiffs' purported proxy omission claim.

Finally, Plaintiffs cite two cases for the proposition that "surprise" and "lack of briefing" are not stated bases for reconsideration under Local Rule 7-18. Opp. at 2 n.2. Neither case applies to the facts here. In *In re Countrywide Financial Corp. Mortgage Backed Sec. Litig.*, 966 F. Supp. 2d 1031 (C.D. Cal. 2013), Judge Pfaelzer denied the FDIC's motion for reconsideration of orders finding that FIRREA did not preempt certain statutes of repose and, therefore, the FDIC's claims were time barred. In so doing, she gave a full-throated defense of her prior rulings, addressing all of the alleged errors and recounting that there was no surprise, as she had expressly advised the parties to prior oral argument to address the issue of preemption, and both sides did so extensively. *Id.* at 1040. In *Collegesource Inc. v. Academyone, Inc.*, 2015 U.S. LEXIS 164550 (S.D. Cal. Dec. 8, 2015), Judge Curiel rejected plaintiff's argument of "surprise" as a basis for reconsideration because there was no surprise: defendant (which won on summary judgment) had addressed a point in its reply brief in response to the plaintiff having raised the point in its opposition brief. *Id.* at *15 n. 2.

In contrast to these cases, Defendants here could not reasonably have anticipated and addressed the Court's October 20 proxy omission ruling in advance. Defendants' Motion for Reconsideration is not an attempt to "relitigate a claim that was briefed and argued on both sides" (Opp. at 3 n.3), but rather a request that the Court correct the record by holding that there is no proxy claim in the current Complaint. If Plaintiffs want to attempt to allege a claim of misrepresentation by omission in the Proxy under Section 14(a), they are free to attempt to do so, and give Defendants a fair opportunity to address it.

**CLEAR ERROR ON THE MERITS**

On reconsideration, the Court may amend the October 20 Order to find that Plaintiffs have not alleged, with particularity or otherwise, a proxy violation and leave for another time the rationale for rejecting or sustaining such a claim, should Plaintiffs choose to attempt to amend their pleading. That said, Defendants respectfully submit that the Court's analysis regarding a proxy violation in the

October 20 Order is clearly erroneous. In their Opposition, Plaintiffs seek to bolster the Court's analysis with arguments of their own, none of which carry water.

<u>First</u>, Plaintiffs assert that the Court's analysis is based on "well-established case law and legal principles and made no novel legal findings." Opp. at 3. In making this bare assertion, Plaintiffs totally ignore the points and authorities in Defendants' Opening brief. As those authorities establish, in order to state a proxy violation based on an omission, a plaintiff must identify a statement *in the proxy* that is rendered materially misleading by the alleged omission. *See* Opening at 3-7, citing, among other authorities, 12 CFR 240.14a-9, *Golub v. Gigamon, Inc.*, 847 Fed. Appx. 368, 372 (9th Cir. 2021) (rejecting proxy omissions claim under Section 14(a) that did not render statements in the proxy misleading); *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1018-19 (D. Ariz. 2019) (emphasis added) (dismissing Section 14(a) claim based on list of alleged omissions untethered to any particular allegedly misleading statement in the proxy).

An alleged omission from a proxy violates Section 14(a) and Rule 14a-9 only where "*either* [1] the SEC regulations specifically require disclosure of [the] omitted information….*or* [2] the omission makes other statements in the proxy statement materially false or misleading." *Karp v. SI Financial Group, Inc.*, 2020 U.S. Dist. LEXIS 67003, at *31 (D. Conn. Apr. 16, 2020) (emphasis and enumeration added, quoting *Resnik v. Scartz*, F.3d 147, 151 (2d Cir. 2002)). Plaintiffs do not allege that any SEC regulations specifically required disclosure regarding paid and unpaid reservations, nor do they allege that the absence of a disclosure regarding paid and unpaid reservations rendered any statement *in the Proxy* materially false or misleading. Although the Proxy includes extensive disclosure regarding the proposed merger, and why PSAC and Faraday supported it, including management projections of revenue and production,[2] Plaintiffs have not alleged that any of this disclosure was

---

[2] *See* Dkt 59 Motion to Dismiss, Exhibit 7 with link to final Proxy at

rendered materially misleading by the absence of a disclosure about paid and unpaid reservations. This void in the Complaint is fatal to any viable proxy omission claim.

Second, Plaintiffs posit a misreading of Rule 14a-9 as creating a duty to correct the reservations statement. Opp. at 3-4. This position is belied by the plain language of Rule 14a-9(a), which reads in full as follows (emphasis added):

> **No solicitation subject to this regulation shall be made** by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, **containing any statement which**, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or **which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading**.

This means that when soliciting a proxy for the same meeting or subject matter as an earlier proxy solicitation, a company must correct a misstatement in the earlier proxy solicitation. With no supporting authority, Plaintiffs propose that the January 2021 press release announcing the merger "concerned the subject matter of the proxy solicitation" and, therefore, Defendants had a duty to correct it. Opp. at 4. This is a plain misreading of the Rule, which only applies to "**solicitation of a proxy**." The January 2021 press release was an announcement; it did not solicit any stockholder vote by proxy or other action.

In analogous contexts, federal courts have made clear that communications *outside* a proxy—that are not incorporated by reference—are not deemed to be proxy

---

https://www.sec.gov/Archives/edgar/data/1805521/000121390021033972/f424b30621_propertysolutions.htm#T13. The Proxy includes projections (pages 89-91), details regarding legacy Faraday's business (pages 161-182) and management discussion and analysis (pages 182-207), among its 230 pages of information, not counting extensive exhibits.

solicitations subject to Section 14(a). The analysis in *Kaufman v. Allemang*, 70 F. Supp. 3d 682 (D. Del. 2014), is instructive. There, plaintiffs claimed that a proxy solicitation to approve an equity compensation plan omitted information required by SEC Rule 14a-101 regarding the classes and approximate numbers of participants in the plan. *Id*. at 689. The information was not in the proxy, but defendants pointed to an annual report containing the information that was furnished to the stockholders along with the proxy. *Id*. After initially granting defendants' motion to dismiss, the Court reconsidered and denied the motion because, under Rule 14a-3(c), an annual report is not deemed part of the proxy solicitation, unless *incorporated by reference*, or the issuer designates it as soliciting material. The issuer did not do so, but merely provided a copy of the annual report, as required by the Rule. *Id*. at 699. Accordingly, the Court found that it "should not look to those materials for purposes of supplementing the proxy statement" and denied the motion to dismiss. *Id*.

*Kaufman* followed *Dillon v. Berg*, 326 F. Supp. 1214 (D. Del. 1971), where the Court issued a post-trial decision concerning plaintiffs' claim that the directors violated proxy Section 14(a) by making misleading statements in the proxy solicitation for the annual meeting. The allegedly misleading statements were contained in an annual report sent to the stockholders with a copy of the proxy solicitation. According to plaintiffs, the annual report had "ceased to be accurate" and the defendants' failure to update the statements in the proxy thereby violated Rule 14a-9. *Id*. at 1230. The Court rejected this argument because the annual report is not deemed to be a solicitation subject to regulation under 14a-9—the issuer did not request that the annual report be treated as part of the soliciting material and did not incorporate it by reference. Therefore, "the annual report must be disregarded for purposes of determining whether the proxy material violated Section 14(a) or the rules promulgated thereunder." *Id*. at 1231. To hold otherwise would be "tantamount to holding that an annual report is automatically incorporated by reference in a proxy statement which accompanies the annual report." *Id.*

This reasoning applies with equal force here. The rules of incorporation by reference protect defendants from proxy liability for information that is not "in the proxy" and, on the other hand, protect stockholders from surprise by limiting defendants' ability to point to information outside a proxy to satisfy their proxy disclosure obligations. *See Silberstein v. Aetna, Inc.*, 2015 U.S. Dist. LEXIS 43901 (S.D.N.Y. Mar. 26, 2015) (rejecting plaintiffs' claim that defendants were required to correct misinformation in political action reports outside the proxy, and not incorporated by reference in the proxy). Here, the Court correctly found that the January 2021 press release was not incorporated by reference in the Proxy. Since the press release is not itself a proxy solicitation, and was never designated by any Defendant as such, Rule 14a-9 imposes no duty to correct it in the Proxy.

Third, Plaintiffs argue that *Delaware law* imposes a duty on Defendants to disclose "all material information" when soliciting stockholder action, citing *St. Louis Police Ret. Sys. v. Severson*, 2012 U.S. Dist. LEXIS 162392, at *1 (N.D. Cal. Oct. 23, 2012). Opp. at 4. But Plaintiffs do not allege any breach of fiduciary duty under Delaware law in this case. In *St. Louis*, the plaintiffs alleged a proxy violation of Section 14(a) and also asserted a Delaware state law breach of fiduciary duty claim for the same alleged proxy violations. The Court cited both Delaware law and federal proxy law in reaching its decision, but did *not* find, contrary to Plaintiffs' suggestion, that the laws are the same or have the same scope. *See Karp*, 2020 U.S. Dist. LEXIS 67003, *39-40 (elucidating significant differences between Delaware fiduciary duty law and federal proxy disclosure law).

In fact, the Court's analysis of federal proxy law in *St. Louis* supports Defendants' position in this case. In *St. Louis*, Plaintiffs had alleged that a proxy solicitation seeking stockholder approval of modification of an equity compensation plan omitted material information that the issuer was out of compliance with the existing plan, and that regulatory action would be taken if the plan was not modified upon shareholder approval. All of that information was set forth in detail, however,

via an SEC Form 8-K, which was public, but not incorporated by reference or repeated in the proxy. *Id*. at *6-7. The Court held, therefore, that the Form 8-K should not be considered to establish the directors' compliance with their disclosure obligations in the proxy. *Id*. at *13-15.[3] By the same token, Plaintiffs here may not look *outside* the Proxy to state a proxy omissions claim, where the outside material is not incorporated by reference.

As stated in the Opening brief, and left entirely unaddressed by Plaintiffs, the proxy laws do not impose a generalized duty to disclose "all" material or relevant information. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997 (9th Cir. 2002) (affirming dismissal of plaintiffs' claims for failure to "specify the reason or reasons why the statements made … were misleading or untrue, not simply why the statements were incomplete."); *see also In re Hot Topic, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 180513, *25-26 (C.D. Cal. May 2, 2014) (following *Brody* and finding that an alleged proxy omission "standing alone" "would be insufficient to maintain a section 14(a) claim").

Here, Plaintiffs cannot point to a single allegation showing how the absence of paid and unpaid reservations data renders any statement made in the Proxy materially misleading. Defendants respectfully request that the Court reconsider and amend the October 20 Order to dismiss any purported proxy claim under Section 14(a).

---

[3] The Court quoted with approval the Second Circuit in *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198-200 (2d Cir. 1993), that "information appearing in a company's 10-K Report to the SEC, but not distributed to shareholders, was not part of the 'reasonably available mix' for purposes of the directors' duty of disclosure." *St. Louis*, 2012 U.S. Dist. LEXIS, at * 13.

| | |
|---|---|
| Dated: November 28, 2022 | TROUTMAN PEPPER HAMILTON SANDERS LLP<br><br>By: /s/ Pamela S. Palmer<br>Pamela S. Palmer<br>Alan Kessel<br>Jay Dubow<br>Erica Hall Dressler<br><br>Attorneys for Defendants |