# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

```
JIAN ZHOU, individually and on     )
behalf of all others similarly     )
situated,                          ) CASE NO.
                                   ) 21-CV-9914-CAS
              Plaintiff,           )
                                   )
        v.                         )
                                   )
FARADAY FUTURE INTELLIGENT ELECTRIC)
INC. f/k/a/ PROPERTY SOLUTIONS     )
ACQUISITION CORP., CARSTEN         )
BREITFELD, ZVI GLASMAN, WALTER J.  )
MCBRIDE, JORDAN VOGEL, AARON       )
FELDMAN, and YUETING JIA,          )
                                   )
              Defendants.          )
_____)
```

REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS

MONDAY, OCTOBER 17, 2022

10:06 A.M.

LOS ANGELES, CALIFORNIA

---

MAREA WOOLRICH, CSR 12698, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, SUITE 4311
LOS ANGELES, CALIFORNIA 90012
mareawoolrich@aol.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF:**

    POMERANTZ LLP
    By:  Austin P. Van, Attorney at Law
    600 Third Avenue, 20th Floor
    New York, NY 10016

**FOR DEFENDANTS:**

    TROUTMAN PEPPER HAMILTON SANDERS LLP
    By:  Pamela S. Palmer, Attorney at Law
    350 S. Grand Avenue, Suite 3400
    Los Angeles, CA 90071

    TROUTMAN PEPPER HAMILTON SANDERS LLP
    By:  Jay A. Dubow, Attorney at Law
    3000 Two Logan Square
    Philadelphia, PA 19103

1  as if you had had differing opinions, for example, about
2  whether or not you can create a time travel machine within a
3  year.  It's not the sort of thing, you know, like where one
4  person could disagree about a logistical problem and whether
5  that's solvable.  This is, at best, on their part speculation.
6          But they -- and more than that, it was clear that
7  they couldn't.  Because even if they, you know, invented it
8  immediately somehow through a miracle, there were these
9  additional problems that would cause a delay.
10          But I think it's most essential they tested the
11  nature of the problem at issue, logistical problems versus
12  invention.
13          THE COURT:  Okay.
14          MR. VAN:  So I wanted just to add something about
15  the Section 14 claim.
16          THE COURT:  Okay.
17          MR. VAN:  So we can, I guess, grant arguendo for a
18  moment even we respectfully disagree about the incorporation by
19  reference point.
20          Even if the proxy statement didn't incorporate by
21  reference the statements about the 14,000 reservations, we feel
22  that there was a material omission.  And the material omission
23  is poorly stated, I will have to admit, in our opposition.  I'd
24  like to rephrase it here.
25          The omission -- the relevant omission is that the

1 company previously had stated that they had 14,000 reservations
2 and that that was false.  The omission is if they -- if it's
3 out there in the public domain was the statements by the
4 company that was false -- the statement that was important to
5 investors because of the implications to investors or, you
6 know, the likely immediate success of the company.  That's a
7 material omission.
8         And it's true what defendants say.  Certainly the
9 securities laws standing on their own don't require that
10 individual -- that companies disclose all material facts.  The
11 case is different when a company is a Delaware corporation and
12 it is making statements on which shareholder action is going to
13 be based.
14         Then Delaware law imposes an obligation to disclose
15 all material facts, and courts in the Ninth Circuit have
16 recognized that that enforces an obligation for the purposes of
17 Section 14 under federal law to disclose all material facts.
18 And that wasn't done here.
19         So we feel that there is a case -- a fair argument
20 for omissions under Section 14 with respect to the reservation
21 statement.
22         THE COURT:  Okay.
23         MR. VAN:  Your Honor, I might stop there and just
24 ask whether there are any questions or concerns that you have.
25 I might ask that you come back to me if you have any remaining

**UNITED STATES DISTRICT COURT**

```
 1   defendant --
 2               THE COURT:  No.  The ones you are addressing, the
 3   PSAC, et cetera.
 4               MR. DUBOW:  Yes.  Thank you, Your Honor.
 5               THE COURT:  Okay --
 6               MR. VAN:  Your Honor, I'd be happy just quickly to
 7   run through the points he made if you have time.  If not, no
 8   worries.
 9               THE COURT:  We are working on it, but why don't you
10   because you are here.  And I do have one substantial matter
11   coming up, but we are trying to arrange it so they get their
12   time to argue.  So you can --
13               MR. VAN:  Of course.  I'll try to go quickly.
14               So on the battery plaintiffs, there are no
15   allegations.  Those allegations are all in the J Capital
16   Research report which was expressly --
17               (Zoom proceedings interruption.)
18               MR. VAN:  And defense counsel argues that general
19   warnings for reservations purposes of the PSLRA, and that's not
20   the case.  Your Honor correctly cites *In re Copper Mountain*
21   which required that the warning be precise and directly -- at
22   issue.  And it's not what these forward -- what these warnings
23   did.
24               On the omissions, I'd like to point the Court to --
25   I'm flipping pages -- paragraphs 148 and 128.  There we state
```

UNITED STATES DISTRICT COURT

1  that "The statements and omissions were materially false and
2  misleading because they failed to disclose material adverse
3  information and/or misrepresented the truth about Faraday's
4  business operations and prospects as alleged herein" --
5         THE REPORTER: Counsel --
6         THE COURT: Slow down. Slow down.
7         MR. VAN: Okay. I'm so sorry. So it's all just
8  quoted from paragraph 148.
9         And I think the point here is that we allege
10 generally that these false and misleading statements were
11 misleading because they omitted materially adverse information.
12 And then we specified that materially adverse information with
13 respect to the 14,000 reservations statement in paragraph 128.
14         As for the individual defendants, for Vogel,
15 Vogel -- first of all, the January 28th press release was a
16 joint statement, and Vogel's name is on that statement. He's
17 the person who is listed as the contact. It's very unlikely
18 that he didn't review it and sign off on it. Surely he did.
19 Surely everyone did.
20         Surely the CEO, the Co-CEOs, looked at and had the
21 ability to change the most important document that expressed
22 the point of the formation of PSAC which was to find a company
23 and acquire it. And there is the document in which they
24 announced the point of the company has been achieved.
25         Of course they thought -- of course they read it,